

Randall Henri Steinmeyer, in propria persona
Mail: 700 W. Harbor Drive., Suite 1302
San Diego, CA 92101
Phone: (619) 742-7533
Email: Randall7575@me.com

In Propria Persona

**FILED**

Aug 18 2022

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ s/ cynthial _____ DEPUTY

# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF CALIFORNIA

RANDALL HENRI STEINMEYER, an individual

Plaintiff,

vs.

LABORATORY CORPORATION OF AMERICA HOLDINGS, a Delaware Corporation; GEORGE MAHA, an individual

Defendants.

Case No. **'22CV1213 DMS DDL**

**COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff Randall Henri Steinmeyer ("Plaintiff") for his Complaint against defendant Laboratory Corporation of America Holdings, ("LabCorp") alleges, on knowledge as to his own actions, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1.      This is an action against Laboratory Corporation Holdings and its expert witness George Maha for marketing and selling motherless testing as a scientific paternity test. In reality, motherless testing is a kinship test, social science evidence-based (not biological), and fails to meet applicable testing standards governing genetic testing. Defendants' artificial and fictitious test caused significant damages to Plaintiff exceeding $2,000,000.

1

COMPLAINT FOR DAMAGES

2.      Plaintiff seeks monetary damages exceeding $2,000,000.

## JURISDICTION

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of California, Delaware and North Carolina and that the amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

4.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

5.      Plaintiff is an individual who resides in San Diego, California.

6.      Upon information and belief, Laboratory Corporation of America Holdings ("LabCorp") is a corporation that is incorporated in Delaware and has its principal place of business in Burlington, North Carolina. LabCorp is a publicly traded corporation under the symbol "LH."

7.      Upon information and belief, George Maha ("Maha") is an individual who resides in North Carolina. Upon further information and belief, Maha is an associate vice president of LabCorp. As the vice president of LabCorp, Maha is responsible for all of LabCorp's DNA paternity tests.

## FACTS

**A. LabCorp's Commercial Genetic Testing Monopoly**

8.      LabCorp acquired control of the commercial genetic testing industry in the United States through LabCorp's acquisition of Orchid Cellmark (Orchid). Post-Orchid acquisition, LabCorp enjoyed a monopoly over genetic testing in public and private markets.

9.      LabCorp's monopoly over genetic testing also carried over to family courts across the United States. LabCorp leveraged its monopoly to usurp control of

2

LabCorp's DNA testing regulator, the Advancement of Blood & Biotherapies ("AABB"). Once in control of the AABB, LabCorp switched its genetic paternity test with an artificial test and added fictional math against the current AABB regulations. LabCorp concealed the test switch from the public.

10.    Previously, the FDA transferred regulatory authority to regulate DNA testing to the AABB. The AABB transferred the authority to the AABB's Relationship Testing Committee ("RTC"). The AABB's RTC is controlled by none other than Dr. George Maha who is LabCorp's Associate Vice President and Laboratory Director of the DNA Identification Testing Division.

11.    LabCorp's monopoly over DNA testing and control of the AABB is important in its scheme. First, since LabCorp assumed control over its DNA testing regulator (the AABB), LabCorp essentially self-reports and self-regulates.

**B. The Science Behind Scientific Paternal Testing**

12.    A paternity test does three key things: (1) simultaneously confirms the mother and determines the child's maternal obligate (not optional) alleles ("MOAs"); (2) subtracts the child's maternal obligate alleles (MOAs) from the child's DNA to determine the child's paternal obligate alleles ("POAs") and (3) compares the alleged father's DNA to the child's POAs. If all POAs match the father's DNA, then a CPI and PoP can be calculated and presented to a court as evidence.

13.    A true "paternity test" can do all three: (1) confirm the mother, (2) identify the father, and (3) identify a child as a biological child of the same.

14.    In a scientific paternity test, the Combined Paternity Index ("CPI") and Probability of Paternity ("PoP") calculation conclusions are the test results and the basis for determining the legal status of a potential father of a child.

15.    A child's DNA contains two sets of 20 markers. The first set is from the <u>biological</u> mother and the second set is from the <u>biological</u> father. A scientific paternity test identifies (and removes from comparison) the 20 <u>maternal</u> markers.

3

The 20 remaining markers are the paternal markers. If the child's 20 paternal markers match all 20 of the alleged father's markers, the alleged father may also be the "biological" father. A scientific paternity test calculates a POP and CPI if, and only if, all twenty out of twenty of the child's paternal markers (otherwise known as Paternal Obligate Alleles or "POA") match the alleged father.

### C. LabCorp's Façade

16.    LabCorp maintains that it uses a real paternity test. In truth, LabCorp's motherless paternity test is a sham. The reality is that the manufacturer of LabCorp's "test" cannot scientifically calculate paternity using LabCorp's methods. Instead of performing the 20 tests conducted in a scientific paternity test, LabCorp's artificial test pretends that 20 out of 20 of the tests reveal 20 separate highly specific paternal matches. In truth, the artificial test is blind to all 20 different paternal matches and LabCorp's artificial test fictionalized all 20 out of 20 matches between the alleged father and child in question.

17.    The scheme is as follows: LabCorp's motherless test generates math from random similarities between all humans, not 20/20 paternal POA matches.[1] LabCorp's motherless test is not designed to identify paternal biological relationships. LabCorp's test is only designed only to illuminate these similarities and pawn off these similarities[2] as discrete paternal POA matches. These similarities, and not 20/20 paternal POA matches, steer the motherless test's "mathematical results." In truth, the mathematical results[3] on each of the motherless paternity tests are fictitious.[4]

---

[1] Maha's motherless test computations suggest discrete biological meaning where truly none exists. If Maha's "science" was executed in the 8th Century, it might look like "If the sun comes up tomorrow, you are the biological dad."
[2] Within Maha's professional circle, Maha's "tests" are also known as "similarity tests."
[3] Of CPI and PoP.
[4] Maha's results are not scientific or even replicable by an independent lab. Maha's results are not evidence.

4

COMPLAINT FOR DAMAGES

18.    LabCorp then engages in imaginary mathematical computations as if the artificial test found 20 of 20 paternal matches. These fictitious calculations are the same calculations that LabCorp subjected Plaintiff to in his underlying case. LabCorp's CPI and PoP mathematical calculations are based upon purely non-existing paternal (POA) matches and are completely fictional.

19.    The following table further illustrates other differences between a scientific paternity test and LabCorp's unscientific motherless paternity test:

|  | Forensic Laboratories | LabCorp |
|---|---|---|
| Sells motherless paternity testing | No | Yes |
| Prohibits independent labs from reviewing | No | Yes |
| Calculates CPI/PoP without maternal DNA | No | Yes |
| Self-Regulation | No | Yes |
| Sells Paternity tests with insurance | No | Yes |

20.    The motive for LabCorp is likely financially motivated. Rather than provide alleged fathers like Plaintiff an authentic genetic paternity test, LabCorp subjects alleged fathers to a cheap and artificial test, albeit with a paternity test wrapper. LabCorp's inflated profit comes at the expense of these alleged fathers.

21.    While using standardized scientific paternity testing (also known as "Trio" tests), on average, about 30% of alleged fathers are excluded as biological fathers in US courts. In comparison, while implementing LabCorp's artificial tests, many of these alleged fathers would not be excluded.

5

COMPLAINT FOR DAMAGES

22. Put another way, if LabCorp conducts 500,000 DNA tests using this non-scientific and artificial method, up to 150,000 men, per year could be falsely told that they are the biological father of a child.[5] LabCorp's artificial tests create fictional paternal relationships where no such relationship exists.

**D. LabCorp's Game of Deception**

23. LabCorp engages in deceptive marketing of its motherless paternity testing through SEC filings, website representations, non-peer-reviewed publications, and false reassurances to its patients and clients, including Plaintiff.

i.    <u>False Filings with the SEC</u>

24. With regards to paternity testing, LabCorp's SEC statements falsely claim that its paternity testing tests the mother. LabCorp stated:

25. Parentage and Donor Testing. LCD provides forensic testing used in connection with parentage evaluation services that assist in determining parentage for child support enforcement proceedings and determining genetic relationships for immigration purposes. Parentage testing involves the evaluation of immunological and genetic markers in specimens obtained from the child, the mother, and the alleged or putative father.

26. LabCorp falsely claims to its shareholders and SEC that its testing practices are "forensic" and determines the paternity of the child by testing the mother and alleged father.

ii.    <u>Representations on its Website</u>

27. Likewise, on its website, LabCorp also claims it tests maternal DNA.

28. For instance, on its website, LabCorp published a sample motherless testing report. On the report, maternal DNA is identified and listed first.

///

///

[5] Over 10 years this number could swell to 1,500,000 false fathers in the United States.

6

COMPLAINT FOR DAMAGES

### E. Plaintiff's Underlying Case

29. On or about February of 2016, Plaintiff separated from his wife, Tina Greco. During the separation, Plaintiff did not have any sexual intimacy with Ms. Greco, and the two lived apart.

30. On February 28, 2017, Ms. Greco conceived a child, "Little Doe."

31. For reasons unknown to Plaintiff, the state instituted a child dependency case against Ms. Greco on behalf of Little Doe.

32. That same month, a child dependency agency contacted Plaintiff asking him to be a part of the child dependency case for the limited purpose of ruling out his candidacy as Little Doe's father.

33. At a hearing, his attorney requested a paternity test. Plaintiff submitted to a paternity test with the understanding that it would be a scientific and accurate genetic test that would exclude him as the father of Little Doe.

34. The court appointed LabCorp to conduct the paternal genetic test.

35. Unknown to Plaintiff, LabCorp switched the scientific paternity test to an artificial motherless paternity test. Again, unknown to Plaintiff at the time, LabCorp fictionalized the analysis and testing by failing to also test maternal DNA.

36. The test concluded that Plaintiff was the father of Little Doe. LabCorp further represented that it was 99.99% certain that Plaintiff was the father.

37. On or about August of 2019, citing Plaintiff's "paternity test" in dependency court, the court ordered Plaintiff to begin paying child support for Little Doe.

38. On or around September 2019, the court paid LabCorp for the paternity test using wages garnished from Plaintiff.

39. LabCorp's Letter to Plaintiff

40. Following the closure of the dependency case, on or about March 2020, Plaintiff contacted LabCorp regarding the validity of his motherless paternity test.

7

COMPLAINT FOR DAMAGES

41.    On April 1, 2020, Maha directed in-house LabCorp counsel to deceive Plaintiff about the validity of the motherless test. At Maha's behest, in-house legal counsel sent Plaintiff a letter stating there was no reason to question the validity of the fictitious test results. Further, the letter explicitly reaffirmed the Plaintiff's motherless test was actually a "paternity" test. The letter, in the relevant part, stated as follows:

> Dear Mr. Steinmeyer,
> I write in response to your recent inquiry directed to Dr. George Maha regarding the validity of certain DNA paternity testing performed by Laboratory Corporation of America ("LabCorp"). LabCorp investigated your concerns and concluded that there is no reason to question the validity of paternity results.

## F. The Scheme Begins to Unravel

42.    Plaintiff begins a scrutinizing investigation into the validity of LabCorp motherless paternity testing.

43.    Plaintiff discovered a number of articles, including a peer-reviewed scientific study dated March 2021, regarding motherless testing.

44.    The peer-reviewed study found that omitting maternal DNA from the paternity test artificially spikes the probability of determining a random man as a potential biological father of a child by about a factor of approximately 100,000.

45.    The study concluded: "Motherless paternity testing could have dire financial and legal consequences, not only for the testing facility but also for the wrongly included fathers....."

46.    Following this research and inquiry, Plaintiff confronts officers of LabCorp regarding motherless testing.

47.    On November 22, 2021, in a telephone exchange, Plaintiff spoke to Vice President Maha and asked why motherless paternity tests are sold to courts and consumers as real paternity tests.

8

COMPLAINT FOR DAMAGES

48. Maha succinctly replied, "If the courts and private parties want the tests that way, who are we to stop them?"

49. On February 22, 2022, in a telephone exchange, Plaintiff spoke to LabCorp DNA Director, Gary Stuhlmiller regarding the use of motherless testing in courts. Mr. Stuhmiller admitted that use of motherless testing was likely financially motivated (the cost of motherless testing is 66% of the cost of a trio test). Dr. Stuhlmiller resigned weeks after making this statement.

50. Finally, in March 2022, **Plaintiff retained a genetic expert who generated a report concluding that motherless testing is not a paternity test** and its use as such as "worthless."

**G. Truth Uncovered**

51. On or about April 12, 2022, Plaintiff again spoke with Vice President Maha and confronted him with the core flaws behind LabCorp's motherless testing (that is, the omission of maternal genetic and fictionalized linked loci analysis). During the conversation, Maha made a stunning admission to Plaintiff admitting that by using motherless testing, LabCorp intentionally switched "biological evidence" with "social science evidence."

52. Maha's admission not only confirmed the falsity of LabCorp's prior statements[6] but also LabCorp's fraudulent intent. Before April 12, 2022, LabCorp, its officers, and executives continued to maintain the following about its motherless testing:

- That 20 subtests are performed.
- That testing identifies 20 paternal matches between an alleged father and child.
- That it is biological and scientific.
- That a Linked Loci analysis is calculated.

---

[6] As alleged herein Defendants false claims to Plaintiff continued after the April 2017 fictitious results through April 12, 2022, the date of Defendant Maha's admission.

- That motherless testing is sufficient to determine a combined relationship index and probability of parentage under Cal. Family Code, Section 7555.
- That motherless testing complies with AABB regulations.

53.    It is now apparent to Plaintiff that none of the preceding representations concerning motherless testing are true and that the following is undisputable:

- That motherless testing cannot determine paternal matches between the alleged father and child.
- That motherless testing is social science evidence-based.
- That motherless testing does not conduct a linked-loci analysis.
- That testing violates AABB regulations.
- That motherless testing is insufficient and cannot determine a combined relationship index or probability of parentage under Cal. Family Code, Section 7555.

54.    After Maha's admission, Plaintiff filed an FDA Citizen Petition requesting the FDA halt the sale of LabCorp's motherless test.

**H. LabCorp's Intent to Defraud**

55.    A paternity test involves three people. If an alleged father is not excluded via a kinship test, maternal DNA is added to the two-person kinship test, transforming it into a three-person paternity test.

56.    If the mother's DNA is not available, it is simply reconstructed by obtaining DNA from close relatives of the missing mother. Maha admits the same in his own 2018 article entitled, "The UPA 2017: The Science of It All" writing,

57.    The biological relatives ideal for testing are both of the missing [mother's] alleged biological parents (the alleged grandparents), as they will contain all the biological material their child has. When both of the alleged grandparents are not available, other relatives can be used. The greater the number

10

COMPLAINT FOR DAMAGES

of relatives tested, the more likely an expert is to be able to reconstruct the genetic material in the missing [mother]. [7]

58.    When subjecting Plaintiff (or anyone) to motherless tests, LabCorp knowingly contradicts not only science but also the law. There is no such thing as a motherless paternity test. Rather, a motherless paternity test is actually a two-person "kinship" or generic "relationship" test. A kinship test involves only two people.

59.    Maha is aware of such because he was instrumental in writing the Uniform Parentage Act ("UPA") governing all 50 states regarding paternity testing.

60.    The (UPA) was written in part by Maha. The UPA requires LabCorp to identify a child's paternity using maternal DNA.[8] Ironically, Maha induced all 50 states to adopt the UPA as the law.

## I.    The Importance of Maternal DNA is Well Established

61.    The importance of maternal DNA is well established. In 1983, the Airlie Commission promulgated standards and mathematics for paternity testing in the United States together with the courthouses therein. The standards established that maternal DNA was a condition precedent to a paternity test.

62.    In 1986, The Department of Health and Human Services published a guide for Judges in Child Support Enforcement Ex. 6.2 Guidelines for Reporting Probability for Paternity restated the Airlie Commission standards and further stated that maternal DNA is the condition precedent to a paternity test.

63.    In 2004, Robert E. Wenk published <u>Testing for Parentage,</u> Hematology (2004) 11:357–361. In <u>Testing for Parentage,</u> Dr. Wenk revealed: Absent maternal

---

[7]
https://www.americanbar.org/groups/family_law/publications/family-advocate/2018/spring/4spring2018-maha/n See also George C. Maha, Determining Paternity After Death: Genetic Testing When a Party is Not Available, in Disputed Paternity Proceedings (N. M. Vitek, ed., Mathew Bender & Co.) (1999).

[8] Or reconstruct the maternal DNA vis-a-vis relatives.

11

1    DNA, neither the maternal obligate allele nor the paternal obligate allele can be

2    derived. Absent maternal DNA, neither the father nor the mother can be identified.

3         64.    In 2010, Maha published <u>Implementation of a 21-Locus Panel for</u>

4    <u>Human Relationship Testing,</u> 21st International Symposium on Human

5    Identification, Defendant's paper claims statistical value can be derived from

6    physically linked-loci. However, maternal DNA is a condition precedent to deriving

7    value from linked-loci.

8         65.    In 2013, Germany banned motherless paternity testing.

9         66.    In 2015, LabCorp's Dr. Stuhlmiller appeared at the annual Fatherhood

10    Conference[9].

11         67.    During the presentation, Stuhlmiller only referenced authentic

12    paternity testing (mother, child, alleged father.)

13         68.    Finally, even the HHS is aware of the dangers of motherless testing,

14    especially when money is a financial incentive writing, **"[t]esting the mother**

15    **eliminates a potential welfare fraud scheme.**[10]**"**

16    **J. LabCorp's Knowledge**

17         69.    On information and belief, Plaintiff alleges that the only paper written

18    on linked loci analysis and paternity is authored by Maha and published on a

19    corporate website, not a peer-reviewed one. Nevertheless, Maha admits that a

20    linked-loci analysis is not possible with maternal DNA.

21         70.    Although lacking the prerequisite maternal DNA, Maha's linked loci

22    analysis found itself incorporated into LabCorp's motherless testing.

---

[9] https://youtu.be/Lb__fxyl0N8

[10] https://oig.hhs.gov/oei/reports/oei-06-98-00054.pdf

COMPLAINT FOR DAMAGES

71. The linked-loci analysis in a paternity test without maternal DNA cannot exist and should not exist. Yet, it appears in hundreds of thousands of paternity tests sold annually by LabCorp, including one sold to Plaintiff.

**K. Resignations of Responsible LabCorp Employee**

72. Dr. Gary Stuhlmiller is the scientist responsible for signing Plaintiff's motherless paternity test.

73. Working with Maha for decades, Dr. Stuhlmiller inexplicably resigned from LabCorp in Spring of 2022.

**COUNT ONE**

**(Intentional Misrepresentation as Against Defendants Maha and LabCorp)**

74. Plaintiff hereby restates and incorporates by reference the preceding paragraphs as though set forth in full herein.

75. Plaintiff is informed and believes and thereon alleges that Defendant, Maha and, Dr. Gary Stuhlmiller who made the representations herein, are the authorized agents of defendant LabCorp and at the time of making the representations herein alleged and at all times herein mentioned, were acting within the course and scope of his agency and authority for LabCorp.

76. Defendant Maha, on behalf of LabCorp made the following representations to Plaintiff that its motherless paternity test was actually a paternity test.

77. When Maha made this representation, he knew them to be false and made this representation with the intention to deceive and defraud Plaintiff and induce Plaintiff to act in reliance on these representations in the manner hereinafter, or with the expectation that Plaintiff would so act.

78. Plaintiff, at the time this representation was made by Defendant and at the time Plaintiff took the actions herein alleged, was ignorant of the falsity of Defendants' representations and believed them to be true. In reliance on these representations, Plaintiff was induced to submit to a motherless paternity test.

13

COMPLAINT FOR DAMAGES

1    79.    Had Plaintiff known the actual facts, he would have requested an

2    actual scientific paternity test which would have excluded him as the alleged father.

3    80.    Plaintiff's reliance on Defendants' representation was justified because

4    there is no reason a layperson would have otherwise not relied on the statement

5    made by an officer of a publicly traded corporation such as LabCorp.

6    81.    As a proximate result thereof, Plaintiff has been damaged in an amount

7    to be proven at trial but not less than the jurisdictional limit of this court.

8    82.    The aforementioned conduct was an intentional misrepresentation,

9    deceit and/or concealment of material facts known to Defendants, with the intention

10    on the part of Defendants of thereby depriving Plaintiff of property, legal rights or

11    otherwise causing injury and was despicable conduct that subjected to cruel and

12    unjust hardship and conscious disregard of Plaintiff's rights, so as to justify an

13    award of exemplary and punitive damages.

14    **COUNT TWO**

15    **(Fraudulent Concealment as Against Defendants Maha and LabCorp)**

16    83.    Plaintiff hereby restates and incorporates by reference the preceding

17    paragraphs as though set forth in full herein.

18    84.    Plaintiff is informed and believes and thereon alleges that Defendant,

19    Maha and, Dr. Gary Stuhlmiller who concealed certain information, are the

20    authorized agents of defendant LabCorp and at the time of making the

21    representations herein alleged and at all times herein mentioned, were acting within

22    the course and scope of his agency and authority for LabCorp.

23    85.    The court appointed LabCorp and Maha as Plaintiff's genetic experts

24    in his underlying case. Therefore, LabCorp and Maha had a duty to Plaintiff to

25    provide genetic testing services in compliance with Section 7552 and disclose

26    certain information regarding their motherless testing.

27    86.    Maha on behalf of LabCorp, deliberately concealed the true facts

28    regarding motherless testing and deliberately concealed the true facts known to

14

COMPLAINT FOR DAMAGES

them or failed to make any reasonable investigation to determine the true facts from which representations were made as to motherless testing to determine whether they were true or false, and without having any sufficient basis on which to make any representations, knowingly made false representations, concealing the defectiveness of motherless paternity testing as set forth in this complaint.

87.    Not only did Defendants conceal information from Plaintiff, they intentionally switched Plaintiff's paternity test with a kinship test.

88.    Defendant's agents concealed the facts when they each knew the true and correct facts regarding motherless testing.

89.    The concealment of the true facts from Plaintiff was done with the intent to induce Plaintiff to submit to motherless testing and continue their profitable enterprise of marketing non-scientific and non-complaint genetic tests to the courts.

90.    That had Plaintiff known that motherless testing was not a scientific genetic test or an actual paternity test, he would not have submitted to a motherless test and instead requested a trio paternity test.

91.    Defendants' concealment of information and act of intentionally switching Plaintiff's paternity test with a kinship test, harmed Plaintiff.

92.    The aforementioned conduct was deceitful and/or a concealment of material facts known to Defendants, with the intention on the part of Defendants of thereby depriving Plaintiff of property, legal rights or otherwise causing injury and was despicable conduct that subjected to cruel and unjust hardship and conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

## COUNT THREE

### (Negligence Per Se as Against Defendants Maha and LabCorp)

93.    Plaintiff hereby restates and incorporates by reference the preceding paragraphs as though set forth in full herein.

15

94. LabCorp and Maha were negligent and negligent per se in the performance of their duties as experts on behalf of Plaintiff in the underlying case. Defendants violated genetic testing standards under Section 7552 of the Family Law Code, which requires genetic testing to be of a type reasonably relied on by experts in the field of genetic testing. Defendants were also negligent and negligent per se by failing to comply with AABB regulations.

95. Plaintiff is a member of the class of persons the statutes and regulations were designed to protect. That is, alleged fathers.

96. In other respects, Defendants were also negligent because they owed a duty to Plaintiff to perform accurate genetic testing that included performing 20 subtests, identifying 20 paternal matches between alleged father and child, performing a scientific and biological genetic test, and proper linked loci analysis.

97. Defendants breached their duty to Plaintiff because they switched Plaintiff's paternity test with a motherless kinship test that is unable to determine paternity between Plaintiff and Little Doe.

98. As a direct and proximate result of the negligence and negligence per se of Defendants, Plaintiff sustained damages.

99. All damages suffered by Plaintiff were incurred as a result of the negligence or negligence per se, carelessness, and/or recklessness of Defendants.

## COUNT FOUR

**(Violation of California Consumer Legal Remedies Act (Cal. Bus. & Prof. Code, § 1770) as Against Defendants Maha and LabCorp)**

100. Defendant LabCorp was engaged in the business of marketing and selling paternity testing across the State of California, including to the San Diego Superior Court.

101. On or about March of 2017, Plaintiff agreed to submit to what he believed to be a scientific paternity test.

16

COMPLAINT FOR DAMAGES

102.   LabCorp violated Section 1770 of the Act by among other things, representing that Plaintiff's motherless test was a scientific paternity test.

103.   More than 30 days before filing this suit, Plaintiff notified LabCorp of its deceptive business practice and demanded that LabCorp rectify the deception.

104.   LabCorp refuses and still refuses to rectify the deceptive business practices by continuing to market motherless testing as scientific paternity testing.

105.   As a proximate result of LabCorp's deceptive business practice, Plaintiff suffered injuries including but not limited to actual damages in the amount of $2,000,000.

106.   As a result of LabCorp's deceptive business practice, Plaintiff is entitled to bring this suit to recover actual damages, court costs, and reasonable attorney's fees as a prevailing Plaintiff pursuant to Civil Code, Section 1780.

## COUNT FIVE

### (Violation of California False Advertising Law (Cal. Bus. & Prof. Code, § 17500 et seq.) as Against Defendants Maha and LabCorp)

107.   Section 17500 makes it unlawful:
For any person,… corporation… or any employee thereof with intent directly on directly to dispose of real or personal property or to perform services… or to induce the public to enter into any obligation relating thereto, to make or disseminate… before public in this state,… in any newspaper or other publication… or in any other manner or means whatever… any statement, concerning that real or personal property or those services… which is untrue or misleading, and which is known, or which by exercise of reasonable care, should be known, to be untrue or misleading…." (§ 17500)

108.   Beginning on or about a date unknown to Plaintiff, and continuing to the date of this complaint, defendants have conducted a campaign of advertising to the public. This advertising consists of false statements made on LabCorp's website, SEC filings and representations to alleged fathers and the court regarding the validity of its motherless testing for purposes of determining paternity.

109.   This marketing and advertising were and are disseminated to the public across the state of California.

17

COMPLAINT FOR DAMAGES

110.   Defendants have made and disseminated this advertising with the intent directly or indirectly to induce courts, private parties (such as Plaintiff), and other members of the public to purchase or submit to motherless testing for the purposes of determining paternity.

111.   Defendants' advertising was untrue or misleading, and likely to deceive the public, as follows: (1) LabCorp's motherless testing is not scientific and not an actual paternity test, (2) LabCorp's motherless testing does not actually determine CPI or PoP, (3) LabCorp's motherless testing does not perform 20 subtests, (4) LabCorp's motherless test is. Not biological evidence, it is social science based.

112.   In making and disseminating the above statements, Defendants knew, or by the exercise of reasonable care should have known, that these statements were untrue or misleading.

113.   Plaintiff is informed and believes, and on the basis of that information and belief alleges, that, unless enjoined by this court, defendants will continue to engage in the untrue and misleading advertising alleged above.

114.   As a direct and proximate result of the advertising described above, Defendants have received from Plaintiff, and continue to hold, an amount to be determined at trial.

115.   Plaintiff is informed and believes, and on the basis of that information and belief alleges, that as a further direct and proximate result of the advertising described above, Defendants have received from members of the general public, and continue to hold, money acquired from the general public by Defendants as a result of marketing and selling unscientific kinship tests sold as scientific paternity tests.

## COUNT SIX

(Violation of the California Unfair Competition Law (Bus. & Prof. Code, § 17200) as Against Defendants Maha and LabCorp)

18

COMPLAINT FOR DAMAGES

116. Commencing on a date unknown to Plaintiff, Defendants have committed the following acts of unfair competition, as defined by Business and Professions Code section 17200, by engaging in deceptive, untrue, or misleading advertising of its motherless testing as scientific paternity tests.

117. **7.** The acts described above were and are likely to mislead the general public and therefore constitute fraudulent or misleading acts within the meaning of Business and Professions Code section 17200.

118. The fraudulent business and misleading practices of Defendants are likely to continue and therefore will continue to mislead the public by inducing alleged fathers like Plaintiffs to submit to unscientific paternity testing and presents a continuing threat to the public.

119. As a direct and proximate result of Defendants' conduct, Defendants have received and continue to receive profits generated by sales that rightfully belong to members of the general public who have been adversely affected by Defendants' conduct, as well as to Plaintiff by virtue of Plaintiff's monetary damages exceeding $2,000,000.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Requiring Defendants to pay damages sustained by Plaintiff by reason of the acts alleged herein in an amount to be determined at trial but no less than $2,000,000;

B. Awarding Plaintiff prejudgment and post-judgment interest, as well as reasonable attorneys' fees, expert fees, and other costs;

C. Awarding Plaintiff punitive damages;

D. An order for Preliminary Injunctive Relief; and

E. Awarding such other and further relief (including equitable relief) as this Court may deem just and proper.

19

COMPLAINT FOR DAMAGES

1

2    **<u>DEMAND FOR TRIAL BY JURY</u>**

3    Plaintiff hereby demands a trial by jury.

4

5                                          Respectfully Submitted,

6    Dated: August 18, 2022               Plaintiff, in Propria Persona

7

8

9                                         By: /s/ Randall H. Steinmeyer
                                          Randall Henri Steinmeyer
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          20

COMPLAINT FOR DAMAGES