1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

RANDALL HENRI STEINMEYER,

Plaintiff,

v.

LABORATORY CORPORATION OF AMERICA HOLDINGS, a Delaware corporation; GEORGE MAHA, an individual; GARY BUBIS, as Judge of Superior Court of San Diego; ROB BONTA, as Attorney General of California,

Defendants.

Case No.:  22-cv-01213-DMS-DDL

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Before the Court are Defendants' Motions to Dismiss.  (ECF Nos. 6, 8, 9, 36.)  For the following reasons, Defendants' Motions to Dismiss are **GRANTED**.  Plaintiff's claims against Defendants Laboratory Corporation of America Holdings ("Labcorp"), George Maha ("Maha"), Attorney General Rob Bonta ("Bonta"), and San Diego Superior Court Judge Gary Bubis ("Bubis") are **DISMISSED WITHOUT LEAVE TO AMEND**.

## I.   BACKGROUND

In March 2017, Defendant Labcorp administered a "motherless 2 person test[]" pursuant to a court order in a state court dependency proceeding.  (First Amended Compl. ("FAC") ¶¶ 53, 141, ECF No. 4.)  The test determined that Plaintiff was the biological

father of the minor child and the court so decreed.  (FAC ¶ 71.)  Accordingly, the state court issued several Income Withholding Orders against Plaintiff for child support between 2018 and 2022.  (*See* Def. Bubis's Mot. to Dismiss, Ex. D, ECF No. 8-2.)  Plaintiff alleges that Defendants Labcorp and Maha have concealed a portion of the paternity test or generated false test results.  (FAC ¶¶ 196, 203, 205–08.)  Plaintiff claims that Defendants Labcorp and Maha lied to Plaintiff about the validity of the paternity test they administered, (FAC ¶ 74), and Plaintiff argues that Defendant Maha "caused or otherwise induced a judge . . . to hide the material DNA and therefore the paternity evidence." (FAC ¶ 185.)  In this Action, Plaintiff seeks primarily money damages against Defendants Labcorp and Maha, and injunctive relief against Defendants Bonta and Bubis in the form of an order commanding them to stop withholding Plaintiff's income for child support.

The procedural history of this case is convoluted.  Plaintiff filed this action on August 18, 2022, (ECF No. 1), and filed an amended complaint on November 8, 2022. (*See generally* FAC.)  Against Defendants Labcorp and Maha, Plaintiff brought various state tort law claims, (*id.* ¶¶ 198–211, 264–69), claims alleging violations of the California Business and Professional Code, (*id.* ¶¶ 212–25), and claims alleging violations of the California Family Code, (*id.* ¶¶ 226–53).  Against Defendant Labcorp only, Plaintiff brought claims for breach of contract, (*id.* ¶¶ 257–60), negligent manufacture, (*id.* ¶¶ 261–63), strict products liability, (*id.* ¶¶ 270–73), and a Sherman Act claim, (*id.* ¶¶ 274–78). Lastly, Plaintiff brought claims under 42 U.S.C. § 1983 against Defendants Bonta and Bubis for constitutional violations. (*Id.* ¶¶ 279–86.)  Plaintiff alleges that the paternity test results published in court and related court orders injured him primarily in the following two ways: First, after the genetic test yielded positive results of Plaintiff's paternity, the state court decreed Plaintiff to be the father of the minor child and accordingly ordered a portion of his income be withheld for child support.  (*See id.* ¶ 184.)  And second, Plaintiff was required to reimburse the state for the cost of the test because it yielded positive evidence of Plaintiff's paternity. (*See id.* ¶ 190.)  Nowhere in the FAC does Plaintiff plainly allege that he is *not* the father of minor child.

Defendants Labcorp, Maha, and Bubis timely filed motions to dismiss.  (*See* ECF Nos. 6, 8, 9.)  On January 6, 2023, Plaintiff moved for entry of default judgment against Defendant Bonta.  (Pl.'s Req. for Entry of Default J., ECF No. 16.)  On February 10, 2023, Plaintiff filed an ex parte application for temporary restraining order (TRO) against Defendant Bonta seeking an order from this Court "to enjoin Defendant Bonta from taking Plaintiff's property using fictitious, non-statutory test results, immediately."  (Pl.'s Ex Parte Appl. for TRO at 2, ECF No. 28.)  The Court denied the application for lack of jurisdiction over the claim.  (ECF No. 27.)  Then, on March 1, 2023, in response to Plaintiff's Motion for Default Judgment against Defendant Bonta, the Court ordered Plaintiff to show cause why his claim against Defendant Bonta should not be dismissed for lack of subject matter jurisdiction.  (ECF No. 34.)

On March 2, 2023, Plaintiff filed a motion for leave to file a second amended complaint.  (ECF No. 35.)  And on March 8, 2023, Defendant Bonta filed a Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim.  (ECF No. 36.)

Then on March 10, 2023, Plaintiff filed a second ex parte application for a TRO against Defendants Labcorp and Maha, alleging that they had concealed some portions of the results of the paternity test they administered in 2017, and seeking an order to "forc[e]" them to disclose the entirety of the results.  (Pl.'s Ex Parte Appl. for TRO, ECF No. 37; Pl's Mem. in Supp. of Ex Parte Appl. for TRO at 16 n.8, ECF No. 37-1.)  The Court denied the application due to Plaintiff's failure to show irreparable harm.  (ECF No. 39.)

On April 17, 2023, the Court denied Plaintiff's motion for leave to file a second amended complaint.  (ECF No. 54.)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If Plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.* at 570.

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). A court may also consider "matters of judicial notice" in ruling on a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). When ruling on such a motion, a court may consider extrinsic evidence beyond the face of the complaint. *Wolfe v. Stankman*, 392 F.3d 358, 362 (9th Cir. 2004). A challenge for lack of subject matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

When a court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no (1)

"undue delay," (2) "bad faith or dilatory motive," (3) "undue prejudice to the opposing party" if amendment were allowed, or (4) "futility" in allowing amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Group, Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007). "Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . ." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

## III.   DISCUSSION

In this Action, Plaintiff brings twenty claims against four defendants. Plaintiff brings the following claims against both Defendants Labcorp and Maha: negligent misrepresentation, fraudulent concealment, negligence per se, violation of the California Consumer Legal Remedies Act, violation of the California False Advertising Act, violation of the California Unfair Competition Law, various violations of the California Family Code, battery, conversion, and false imprisonment. Plaintiff brings the following claims against Defendant Labcorp only: breach of contract, negligent manufacture, strict product liability, and a violation of § 2 of the Sherman Act. Finally, Plaintiff brings claims for constitutional violations under 42 U.S.C. § 1983 against Defendants Bonta and Bubis. For the reasons explained below, the Court **GRANTS** Defendants' Motions to Dismiss without leave to amend.

### A.   Family Code Claims

Plaintiff alleges that Defendants Labcorp and Maha violated California Family Code §§ 7551, 7552, 7552.5, 7554, and 7555. (FAC ¶¶ 226–53, counts seven–eleven). These statutes govern the use of blood tests in paternity proceedings to determine parentage. Defendants argue that California law provides no private right of action permitting Plaintiff to bring claims for damages for violations of the Family Code. The Court agrees.

"A violation of a state statute does not necessarily give rise to a private cause of action." *Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th 592, 596 (2010). A private cause of action exists when a statute "contain[s] 'clear, understandable, unmistakable

terms,' which strongly and directly indicate that the Legislature intended to create a private cause of action." *Id.* at 597 (quoting *Moradi-Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal. 3d 287, 295 (1988))*; see, e.g.*, Cal. Civ. Code § 51.9 ("A person is liable in a cause of action for sexual harassment" when a plaintiff proves certain elements); Cal. Health & Safety Code § 1285(c) ("Any person who is detained in a health facility solely for the nonpayment of a bill has a cause of action against the health facility for the detention . . . ."); Cal. Bus. & Prof. Code § 17070 ("Any person . . . may bring an action to enjoin and restrain any violation of this chapter and, in addition thereto, for the recovery of damages.").  If a private cause of action is not apparent in the text of the statute, California courts look to legislative history to determine whether "the Legislature intended to create a private cause of action." *Lu*, 50 Cal. 4th at 597.

The text of California Family Code §§ 7551–55 contains no language authorizing a private cause of action as a remedy for violations of those statutes.  Section 7551 provides a legal standard governing when a court may order genetic testing on its own motion or on the motion of the parties in a "civil action or proceeding in which parentage is a relevant fact."  Cal. Fam. Code § 7551(a).  Sections 7552 and 7552.5 provide a set of evidentiary and procedural rules governing the admission of genetic tests results as evidence in a "hearing or trial to establish parentage."  Cal. Fam. Code § 7552.5(b).  Sections 7554 and 7555 set rules for when a positive test creates a presumption of paternity, and specify the process by which a presumed genetic parent may challenge the presumption.  None of these statutes create a private cause of action.  Instead, these statutes function as part of a comprehensive framework to provide procedural and evidentiary rules governing the "use of genetic testing in a proceeding to determine parentage."  Cal. Fam. Code § 7550(b). [1]

/ / /

---

[1] In fact, the chapter of the California Family Code governing the use of blood tests to determine parentage, §§ 7550 – 7562, was formerly codified in the California Evidence Code at §§ 890–897 before the creation of the Family Code.  *See* Act of July 11, 1992 (A.B. 2650), 1995 Cal. Stat. ch. 162.

6

Nor is the Court aware of any legislative history evincing the Legislature's intent to create a private cause of action to enforce the provisions of the California Family Code governing the use of blood tests as evidence for determining parentage.  The Senate and Assembly Floor Analyses of the Legislature's latest amendment revision to these statutes make no mention of any intent to create a private cause of action.  *See* Assembly Floor Analysis on A.B. 2684, Assemb. 2017–18 Reg. Sess. (Cal. Aug. 30, 2018); Senate Floor Analysis on A.B. 2684, S. 2017–18 Reg. Sess. (Cal. Aug. 27, 2018).  And Plaintiff's Responses in Opposition to Defendants Labcorp and Maha's Motions to Dismiss provide no argument as to why he has a cause of action under the California Family Code provisions under which he asserts his claims.  Further, as other courts have noted, California Family Code §§ 7551–55 "do[] not create a duty of care on the part of LabCorp" to Plaintiff, *Falcon v. Long Beach Genetics, Inc.*, 224 Cal. App. 4th 1263, 1270 n.5 (2014), because, as explained above, the statutes only prescribe a set of procedural and evidentiary rules and governing the "use of genetic testing in a proceeding to determine parentage," Cal. Fam. Code § 7550(b).  Lastly, the Court is aware of no case in which a plaintiff has brought a private cause of action under California Family Code §§ 7551, 7552, 7552.5, 7554, or 7555; nor has Plaintiff brought any such case to the attention of the Court.  This confirms the Court's conclusion.

Plaintiff could have sought a remedy for violations of California Family Code §§ 7551–55 in two ways: (1) he could have timely appealed the trial court's alleged error, or (2) he could have challenged the paternity determination with "other genetic testing satisfying the requirements of" the California Family Code "that either excludes the person as a genetic parent of the child or identifies another person as a possible genetic parent." Cal. Fam. Code § 7555(b).[2]  A collateral suit for damages in federal court, however, is not a remedy Plaintiff may pursue.  Accordingly, the court grants Defendants Labcorp and

---

[2] Section 7560 provides that "[t]he court . . . shall order additional genetic testing upon the request of a person who contests the results of the initial testing under Section 7555."  Cal. Fam. Code. § 7560.

Maha's Motions to Dismiss Plaintiff's claims alleging violations of the California Family Code. Because there is no private right of action, leave to amend would be futile. *See Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) ("[F]utile amendments should not be permitted."). Plaintiff's claims for violations of the California Family Code are dismissed with prejudice.

**B.     Other State Law Claims Against Labcorp and Maha**

Defendants Labcorp and Maha argue that all of Plaintiff's state law claims are barred by California's litigation privilege. (Def. Labcorp's Mem. of P. & A. in Supp. of Mot. to Dismiss ("Def. Labcorp's Mem.") at 3–4, ECF No. 6-1; Def. Maha's Mem. of P. & A. in Supp. of Mot. to Dismiss ("Def. Maha's Mem.") at 3–4, ECF No. 9-1.) For the reasons explained below, the Court concludes that all of Plaintiff's remaining state court claims[3] are barred by the litigation privilege.[4]

1.   California Litigation Privilege

Under California law, a publication or broadcast made in any judicial proceeding is privileged. Cal. Civ. Code § 47(b); *see also Action Apartment Ass'n v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007) (interpreting Cal Civ. Code § 47(b)). The litigation privilege has "been held to immunize defendants from tort liability" based on a broad array of legal theories. *Silberg v. Anderson*, 50 Cal. 3d 205, 215–16 (1990); *see also Olsen v. Harbison*, 191 Cal. App. 4th 325, 333 (2010) ("It immunizes defendants from virtually any tort liability . . . with the sole exception of causes of action for malicious prosecution."). "The principal purpose of [the litigation privilege] is to afford litigants and witnesses . . .

---

[3] This includes Plaintiff's following claims against Defendants Labcorp and Maha: negligent misrepresentation (count one), fraudulent concealment (count two), negligence per se (count three), violation of the California Consumer Legal Remedies Act (count four), violation of the California False Advertising Act (count five), violation of the California Unfair Competition Law (count six), battery (count twelve), conversion (count fifteen), and false imprisonment (count sixteen); and the following claims against Defendant Labcorp only: third party contract (count thirteen), negligent manufacture (count fourteen), and strict liability (count seventeen).

[4] Because the Court concludes that the California Family Code claims fail for lack of a private cause of action, the Court need not decide whether the California litigation privilege applies to those claims.

8

the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Silberg*, 50 Cal. 3d at 213.  "In order to achieve this purpose of curtailing derivative lawsuits," the California Supreme Court has given the litigation privilege "a broad interpretation." *Action Apartment Ass'n*, 41 Cal. 4th at 1241.

"Despite its broad and absolute nature, the litigation privilege only protects publications and communications." *Falcon*, 224 Cal. App. 4th at 1272.

> "[A] threshold issue in determining the applicability of the privilege is whether the defendant's conduct was communicative or noncommunicative. . . . The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action. . . . That is, the key in determining whether the privilege applies is whether the *injury* allegedly resulted from an act that was communicative in its essential nature."

*Id.* (quoting *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (2006)) (emphasis added).

> And, if the gravamen of the action is based on a communicative act, "the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct . . . . [U]nless it is demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies."

*Id.* at 1272–73 (quoting *Rusheen*, 37 Cal. 4th at 1065).  Thus, to determine whether the litigation privilege applies, a court must determine whether the injury complained of was caused by "an act that was communicative in its essential nature," *Rusheen*, 37 Cal. 4th at 1058, which occurred as part of a judicial proceeding.

Courts in California have applied the litigation privilege against claims related to court-ordered paternity tests.  *See Falcon*, 224 Cal. App. 4th at 1273–78 (holding that the litigation privilege shielded a laboratory's production of erroneous paternity test results from tort liability because the test was conducted in connection with paternity proceeding in court); *Garnica v. Lab'y Corp. of Am. Holdings*, No. 20-cv-02411, 2021 WL 4065717 (E.D. Cal. Sept. 7, 2021) (same).

/ / /

/ / /

2. <u>Analysis</u>

The injuries alleged in each of Plaintiff's remaining state law claims stem from the announcement of the paternity test results in state court or preceding noncommunicative acts that were necessarily related to the communication.  Defendants Labcorp and Maha conducted the genetic test pursuant to a court order and announced the results of the test in a judicial proceeding.  (*See* Benoff Decl. in Supp. of Def. Labcorp's Mot. to Dismiss, Ex. A, ECF No. 6-3.[5])  The genetic test results showed that Plaintiff was the genetic father, and as a result, the state court issued several Income Withholding Orders against Plaintiff for child support between 2018 and 2022.  (*See* Def. Bubis's Mot. to Dismiss, Ex. D, ECF No. 8-2.)  In addition, the court ordered Plaintiff to pay for the cost of administering the genetic test.  (FAC ¶ 93.)  These two injuries appear to be the basis of all of Plaintiff's remaining state law claims, (*see id.* ¶¶ 73, 83–84, 93), except for the battery and false imprisonment claims.  Because these two injuries are both the result of a communicative act that occurred in a judicial proceeding—i.e., the communication of the court ordered paternity test results to the court—Plaintiff's state law claims based on these injuries are barred by the litigation privilege.[6]  Courts in California have applied the litigation privilege to claims of negligence, negligent misrepresentation, and fraud, *see, e.g.*, *Rubenstein v. Rubenstein*, 81 Cal. App. 4th 1131, 1147 (2000); and statutory violations of the California Business and Professional Code, *see, e.g.*, *Loeffler v. Target Corp.*, 58 Cal. 4th 1081, 1125 (2014) ("When . . . the litigation privilege . . . renders the conduct complained of immune from tort liability, a plaintiff cannot use the [Unfair Competition Law] to 'plead around' that

---

[5] The Court takes judicial notice of the state court's order for genetic testing.  *In re Kathryn Steinmeyer*, No. CJ1363 (Cal. Super. Ct. San Diego Cnty. Mar. 24, 2017) (order for genetic testing).

[6] This includes the following claims: negligent misrepresentation (count one), fraudulent concealment (count two), negligence per se (count three), violation of the California Consumer Legal Remedies Act (count four), violation of the California False Advertising Act (count five), violation of the California Unfair Competition Law (count six), breach of contract (count thirteen), negligent manufacture (count fourteen), conversion (count fifteen), and strict product liability (count seventeen).

immunity.") (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (Cal. 1999)).

Plaintiff's battery and false imprisonment claims are barred by the litigation privilege as well.  For his battery claim, plaintiff alleges his injury to be the following: "Defendants caused Plaintiff to be touched with the intent to harm or offend him. . . . Defendant [Labcorp] touched plaintiff for purposes of pretending to conduct a paternity test . . . . Plaintiff consented to a paternity test, not a meaningless test."  (FAC ¶ 255.) However, "the litigation privilege extends not only to defendants' communication of the genetic test results, but [to] the noncommunicative act of the DNA testing itself that is necessarily related to the communication" as well.  *Falcon*, 224 Cal. App. 4th at 1275; *see also Rusheen*, 37 Cal. 4th at 1057 (explaining that the privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards").  California courts have applied the litigation privilege to claims of battery. *See, e.g.*, *Hunsucker v. Sunnyvale Hilton Inn*, 23 Cal. App. 4th 1498, 1502–05 (1994) (concluding that claims of false imprisonment, assault, and battery were barred by the litigation privilege because they stemmed from a "report[] made by citizens to police regarding potential criminal activity," which are communications made for the purpose of litigation).  Therefore, Plaintiff's battery claim is barred by the litigation privilege.

The same is true for Plaintiff's false imprisonment claim.  For this claim, Plaintiff alleges his injury to be the following: "[T]he meaningless, albeit positive 'test,' caused plaintiff to be restrained, confinement [sic] and detained in meaningless proceedings . . . throughout 2017 and 2018 and . . . intermittently through 2022."  (FAC ¶ 267.)  Plaintiff argues that because of the positive paternity test and the state court's resulting determination of paternity, he was required to attend subsequent court proceedings related to the paternity proceeding.  This "injury" stems from Defendants' Labcorp and Maha's act of reporting the paternity test to the state court, "an act that was communicative in its essential nature."  *Rusheen*, 37 Cal. 4th at 1058.  California courts have applied the

litigation privilege to claims of false imprisonment. *See, e.g.*, *Hunsucker*, 23 Cal. App. 4th at 1502–05. Therefore, this claim too is barred by the litigation privilege.

For the reasons explained above, the Court grants Defendants' Labcorp and Maha's Motions to Dismiss Plaintiff's remaining state claims. The claims are dismissed with prejudice because there would be no way for Plaintiff to plead around the key defect that the paternity test was conducted pursuant to court order. *See Klamath-Lake Pharm. Ass'n*, 701 F.2d at 1293 ("[F]utile amendments should not be permitted."). Because the Court concludes that all of Plaintiff's remaining state law claims against Defendants Labcorp and Maha are barred by the litigation privilege and dismisses the claims with prejudice, it need not consider Defendants' other arguments.

## C.    Sherman Act Claim

Plaintiff's Sherman Act claim alleges that Labcorp's acquisition of Orchid Labs in 2011 had the effect of "controlling prices or excluding competition," and "has destroyed the commercial paternity testing market and caused injury to Plaintiff." (FAC ¶¶ 275–78.) Defendants argue that this claim fails because it is both untimely and based on demonstrably false allegations. (Def. Labcorp's Mem. at 7–10.) The Court agrees and grants Defendants' Motion to Dismiss. Because no amendment can cure these central defects, Plaintiff's Sherman Act claim is dismissed with prejudice.

### 1.    Statute of Limitations

Plaintiff's Sherman Act claim fails because it is barred by a rigid four-year statute of limitations. Any action alleging a Sherman Act claim "shall be forever barred unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15b. Plaintiff alleges that Labcorp violated Section 2 of the Sherman Act when it acquired Orchid Labs in 2011. Plaintiff brought his claim in 2022—eleven years after the alleged acquisition injured him. And even if Plaintiff's claim had accrued in 2017, when the paternity test took place, his claim brought in 2022 would still be outside the four-year limitations period.

In his Opposition, Plaintiff argues that his claim is timely because "[a] cause of action in antitrust accrues *each time* a plaintiff is injured by an act of the defendant and the

statue of limitations runs from the commission of the act."  (Pl.'s Opp'n at 12, ECF No. 24 (quoting *Intel Corp. v. Fortress Inv. Grp. LLC*, No. 19-cv-07651-EMC, 2020 WL 6390499, at *19 (N.D. Cal. July 15, 2020)) (alteration in original).)   Plaintiff argues that he has continued to be injured by Defendant's conduct through 2022.  (Pl.'s Opp'n at 12–13.) However, this argument fails because Plaintiff does not allege any such continuing injury in the FAC.  *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) ("Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss.").  Plaintiff has pointed to no act committed within the limitations period.

And Plaintiff cannot raise a discovery rule argument that his claim did not accrue until he discovered it in 2022.  It is settled law that there is no discovery rule for antitrust actions governed by 15 U.S.C. § 15(b).  *See Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 274–75 (9th Cir. 1988) ("In [antitrust] actions governed by 15 U.S.C. § 15b, the plaintiff's knowledge is generally irrelevant to accrual, which is determined according to the date on which injury occurs."); *see also In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-md-2670, 2017 WL 35571, at *14 (S.D. Cal. Jan. 3, 2017) (concluding that the discovery rule does not apply to Sherman Act claims); *In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d. 1195, 1208–10 (N.D. Cal. 2015) (collecting cases across circuits and concluding that the discovery rule does not apply to antitrust cases).

### 2. Demonstrably False Basis

Plaintiff's Sherman Act claim fails for the separate and independent reason that the alleged basis for the claim is demonstrably false.  "A Section 2 monopolization claim 'has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'"  *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 998 (9th Cir. 2023) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966)).  Plaintiff alleges that Labcorp obtained monopoly power over the paternity testing market when it acquired the paternity testing business of the company Orchid Labs.  (FAC ¶ 275.)  This is demonstrably

1    false.  After Labcorp agreed to acquire Orchid in 2011, the Federal Trade Commission

2    ordered Labcorp to sell Orchid's paternity testing business to DNA Diagnostic Corp.

3    (DDC) within ten days of Labcorp's acquisition of Orchid.  Decision and Order, Lab'y

4    Corp. of Am. Holdings, FTC Docket No. C-4341, at 7 (Jan. 30, 2012).[7]  This confirms that

5    Labcorp never willfully acquired or maintained monopoly power as a result of its

6    acquisition of Orchid in 2011–12.

7         Therefore, the Court grants Defendants Labcorp and Maha's Motion to Dismiss the

8    Sherman Act claim.  The claim is dismissed with prejudice because leave to amend would

9    be futile: The claim will always be untimely and cannot be saved by a discovery rule

10   argument; and Plaintiff will not be able to show that the second element of a Section 2

11   claim can be satisfied by Labcorp's acquisition of Orchid Labs.

12   **D.    Section 1983 Claim Against Defendant Bonta**

13        Plaintiff brings a claim against Defendant Bonta under 42 U.S.C. § 1983 for a

14   violation of the Fifth and Fourteenth Amendments to the United States Constitution.  (FAC

15   ¶¶ 279-81.)  Plaintiff alleges that Defendant Bonta "oversees the garnishment of Plaintiffs

16   accounts using non-statutory test and non-statutory procedure to result in significant

17   takings on Plaintiff."  (*Id.* ¶ 281.)  The remedy Plaintiff seeks for this claim is injunctive

18   relief in the form of an order commanding Defendant Bonta to stop withholding his income.

19   (*Id.* ¶ 282.)  Bonta argues that this Court lacks jurisdiction to hear Plaintiff's claim because

20   it is a forbidden de facto appeal of a state court judgment.  (Def. Bonta's Mot. to Dismiss

21   at 3, ECF No. 36.)  The Court agrees.[8]

22        The *Rooker-Feldman* doctrine bars federal courts from adjudicating actions

23   "brought by state-court losers complaining of injuries caused by state-court judgments

---

[7] The Court takes judicial notice of the FTC Decision and Order, which are public records.

[8] The Court need not consider the issue of whether Defendant Bonta's Motion to Dismiss was timely. The Court may consider Defendant Bonta's motion to the extent it raises a challenge for lack of subject matter jurisdiction because a challenge for lack of subject matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh*, 546 U.S. at 506.

rendered before the district court proceedings commenced." *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). This is because a federal court is a court of limited jurisdiction and possesses "only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 535, 541 (1986). Federal district courts lack appellate jurisdiction over decisions of state courts and may not second guess state court decisions. *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003); *see also Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004) ("*Rooker-Feldman* prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment."). Where a plaintiff's claims are "inextricably intertwined" with a state court decision such that ruling in the plaintiff's favor would render the state court decision without effect, "the federal complaint must be dismissed for lack of subject matter jurisdiction." *Bianchi*, 334 F.3d at 898.

Plaintiff alleges that the withholding of his income pursuant to the state court's order deeming Plaintiff to be the father of the minor child was procedurally defective and therefore in violation of the Fifth and Fourteenth Amendments to the Constitution. (FAC ¶¶ 279–81.) Adjudication of this claim would require the Court to effectively review the soundness of a state court ruling rendered before Plaintiff brought this action in federal court, contrary to *Rooker-Feldman*. First, the state court's order of paternity falls within the purview of *Rooker-Feldman* because it was issued in 2017, (FAC ¶ 71), well before Plaintiff commenced this federal court action in 2022. Second, granting Plaintiff the requested relief would require the Court to render without effect the 2017 state court order of paternity, on which the subsequent income withholding orders issued are based. Such collateral review of state court decisions in federal court is precisely what the *Rooker-Feldman* doctrine prohibits.

Further, the extrinsic fraud exception to the *Rooker-Feldman* doctrine does not apply here. The exception applies when a plaintiff asserts that "an adverse party engaged in 'conduct which prevent[ed] [plaintiff] from presenting his claim in court.'" *Reusser v.*

*Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) (quoting *Kougasian*, 359 F.3d at 1140).   Plaintiff argues in his Opposition that the extrinsic fraud exception applies here because "Plaintiff does not . . . allege legal errors by the state courts; . . . he alleges illegal conduct by the co-Defendants intentionally switching" the paternity test results to "create[] an optical illusion on the Court itself."   (Pl.'s Mem of P. & A. re Applicability of *Rooker-Feldman* Doctrine at 12, ECF No. 40-1.)   This may be what Plaintiff alleges against co-Defendants Labcorp and Maha; but Plaintiff has not alleged, and cannot plausibly allege, anything to indicate that Defendant Bonta, against whom he brings this claim, participated in a scheme to defraud Plaintiff.

Accordingly, the Court grants Defendant Bonta's Motion to Dismiss Plaintiff's claim for lack of jurisdiction.   Because there would be no way for Plaintiff to plead around the fact that his claim against Defendant Bonta is an impermissible de facto appeal of state court decisions in violation of the *Rooker-Feldman* doctrine, the Court dismisses the claim without leave to amend.   *See Klamath-Lake Pharm. Ass'n*, 701 F.2d at 1293 ("[F]utile amendments should not be permitted.").[9]   Because the Court concludes that it lacks jurisdiction over this claim, it need not consider Defendant Bonta's other arguments.

### E.   Section 1983 Claim Against Defendant Bubis

Lastly, Plaintiff brings a claim against Judge Gary Bubis, a state court judge of the San Diego County Superior Court.   Plaintiff alleges that Defendant Bubis injured Plaintiff by causing significant, bi-weekly withholdings of his income to occur when he decreed Plaintiff to be the father of the minor child based on a faulty paternity test.   (FAC ¶¶ 283–

---

[9] The Court's dismissal of this claim for lack of subject matter jurisdiction is a dismissal without prejudice. *See Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988) ("Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice so that a plaintiff may reassert his claims in a competent court.").   However, a district court may dismiss a claim for lack of jurisdiction without leave to amend even though the dismissal is without prejudice. *See Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012) ("It is not uncommon for courts to frame a jurisdictional dismissal as being 'without prejudice' because the merits have not been considered. . . . [This] does not necessarily reflect that the court was inviting amendment . . . .").

85.)  The remedy Plaintiff seeks for this claim is injunctive relief in the form of an order commanding Defendant Bubis to issue an order for a new paternity test or for termination of the order authorizing withholding of Plaintiff's income.  (*Id.* ¶ 286.)  Defendant Bubis argues that Plaintiff's claim is barred by judicial immunity.  (Def. Bubis's Mot. to Dismiss at 4–6, ECF No. 8-1.)  Alternatively, Defendant Bubis argues that Plaintiff's claim against him, like his claim against Defendant Bonta, is barred by the *Rooker-Feldman* doctrine as an impermissible de facto appeal of a state court order.  (Def. Bubis's Mot. to Dismiss at 9–10, ECF No. 8-1.)  The Court agrees.

### 1. Jurisdiction

Plaintiff effectively argues that Judge Bubis's determination that Plaintiff is the biological father of the minor child was error.  (FAC ¶ 285.)  As with the claim against Defendant Bonta, granting Plaintiff the relief he seeks here would require this Court to review and render without effect the 2017 state court order decreeing Plaintiff to be the father of the minor child.  For the reasons explained above, Plaintiff's claim against Defendant Bubis is therefore an impermissible de facto appeal of a "state-court judgment rendered before" this "district court proceeding[] commenced," *Exxon Mobile Corp.*, 544 U.S. at 284, and is likewise barred by the *Rooker-Feldman* doctrine.

### 2. Judicial Immunity

Even if the Court had jurisdiction, the claim would be barred by judicial immunity. Plaintiff correctly notes that that judicial immunity only bars suits for damages and does not preclude a court from granting declaratory or injunctive relief.  *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984).  However, in 1996, Congress passed the Federal Courts Improvement Act (FICA), which expanded the scope of judicial immunity such that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  *Moore v. Urquhart*, 899 F.3d 1094, 1104 (9th Cir. 2018) (quoting 42 U.S.C. § 1983).  Thus, FICA effectively "immunizes judicial

officers against suits for injunctive relief." *Roth v. King*, 449 F.3d 1272, 1286 (D.C. Cir. 2006).

Judicial immunity bars Plaintiff's claim for injunctive relief against Defendant Bubis. Plaintiff does not allege that a declaratory decree was violated or unavailable. "Declaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order." *La Scalia v. Driscoll*, No. 10-cv-5007, 2012 WL 1041456, at *7 (E.D.N.Y. Mar. 26, 2012) (quoting *LeDuc v. Tilley*, No. 05-cv-157, 2005 WL 1475334, at *7 (D. Conn. June 22, 2005)). In fact, Plaintiff had the ability to appeal and attempted to do so: he filed a notice of appeal, but his appeal was dismissed due to his failure to file an opening brief on time. (*See* Def. Bubis's Req. for Judicial Notice in Supp. of Mot. to Dismiss, Ex. A, ECF No. 8-2.[10])

Accordingly, the Court grants Defendant's Motion to Dismiss Plaintiff's claim against Defendant Bubis for lack of jurisdiction, and in the alternative, holds that the claim would be barred by judicial immunity. As with Plaintiff's claim against Defendant Bonta, the Court denies leave to amend because amendment would be futile: no amendment can fix the fundamental defects that the Court lacks jurisdiction over Plaintiff's de facto appeal and that Judge Bubis is immune from suit for injunctive relief. The Court need not consider Defendant Bubis's other arguments.[11]

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[10] The Court takes judicial notice of the California Court of Appeal order dismissing Plaintiff's appeal. *In re K.S.*, No. D073380, (Cal. Ct. App. Apr. 3, 2018).

[11] As with the claim against Defendant Bonta, Plaintiff's claim against Defendant Bubis is dismissed without leave to amend, even though it is a jurisdictional dismissal without prejudice.

**IV.    CONCLUSION AND ORDER**

For the reasons explained above, the Court **GRANTS** Defendants Labcorp, Maha, Bonta, and Bubis's Motions to Dismiss.   All of Plaintiff's claims against Defendants Labcorp and Maha are **DISMISSED WITH PREJUDICE**.   Plaintiffs' claims against Defendants Bonta and Bubis are **DISMISSED WITHOUT LEAVE TO AMEND**.

**IT IS SO ORDERED.**

Dated:  June 8, 2023

Hon. Dana M. Sabraw, Chief Judge
United States District Court

22-cv-01213-DMS-DDL